730 A.2d 320

POLICEMAN'S BENEVOLENT ASSOCIATION, LOCAL 292,
PLAINTIFF–APPELLANT, v. BOROUGH OF NORTH
HALEDON, DEFENDANT–RESPONDENT.

Argued December 1, 1998—Decided June 8, 1999.

394

*Kevin P. McGovern,* argued the cause for appellant (*Schneider, Goldberger, Cohen, Finn, Solomon, Leder & Montalbano,* attorneys).

*John J. Segreto,* argued the cause for respondent (*Segreto & Segreto,* attorneys; *James V. Segreto,* of counsel).

*Joseph Licata,* submitted a brief on behalf of *amicus curiae* New Jersey State AFL–CIO (*Loccke & Correia,* attorneys; *Richard D. Loccke,* of counsel).

*Robert E. Anderson,* General Counsel, submitted a brief on behalf of *amicus curiae* New Jersey Public Employment Relations Commission.

The opinion of the Court was delivered by

POLLOCK, J.

In this appeal we revisit the question whether common-law arbitration has survived the passage of the Arbitration Act, *N.J.S.A.* 2A:24–1 to –11 (the "Act"). The Appellate Division doubted that common-law arbitration survived. 305 *N.J.Super.* 454, 457, 459, 703 *A.*2d 1 (App.Div.1997). Accordingly, the court held that plaintiff, the Policeman's Benevolent Association, Local 292(PBA), could not resort to a plenary action to confirm an award resulting from grievance arbitration with defendant, the Borough of North Haledon ("North Haledon" or the "Borough"). *Id.* at 465, 703 *A.*2d 1. One judge dissented in part. *Id.* at 466, 703 *A.*2d 1 (Rodríguez, J., dissenting). The PBA appealed of right. *R.* 2:2–1. We reverse and remand the matter to the Chancery Division.

I.

In November 1993, North Haledon hired a Special Law Enforcement Officer to perform patrol and desk work on regularly scheduled police shifts. The PBA claimed that the replacement of a regular officer with a special officer violated both its collective bargaining agreement (the "Agreement") with the Borough and *N.J.S.A.* 40A:14–146.16(b), which provides that special officers may assist, but not replace, regular officers. The Borough claimed that "short-staffing" within the police department had created an "emergency" under *N.J.S.A.* 40A:14–118 and –122, entitling the Borough to hire special officers during the emergency's existence.

A grievance clause in the Agreement specified the submission of disputes to arbitration conducted in accordance with rules promulgated by the Public Employment Relations Commission (PERC). The PBA filed a grievance, and the matter proceeded to arbitration. In February 1995, the arbitrator entered an award for the PBA.

One section of the Arbitration Act, *N.J.S.A.* 2A:24–7, provides that either party may commence a summary action for confirma-

tion or vacation of the award within three months of its delivery. That provision states:

A party to the arbitration may, within 3 months after the award is delivered to him, unless the parties shall extend the time in writing, commence a summary action in the court aforesaid for the confirmation of the award or for its vacation, modification or correction. Such confirmation shall be granted unless the award is vacated, modified or corrected.

[*N.J.S.A.* 2A:24-7.]

In a prior grievance arbitration, the PBA had prevailed. Within three months of delivery of that award, the PBA brought a confirmation action. The Borough then sought vacation of the award, arguing that the award was contrary to law and against public policy. Adopting the Borough's argument, the Chancery Division vacated the award.

Seeking to avoid a similar result in the present matter, the PBA decided not to file a summary action for confirmation under the Act, but to wait and seek confirmation through a plenary proceeding. By waiting, the PBA hoped to preclude as untimely an action by the Borough to vacate the award.

The Borough also played a waiting game: It hoped that if it did not move to vacate the award, the PBA would fail to file a timely action to confirm, thereby rendering the award unenforceable.

Four months after the entry of the award, the PBA instituted the within action by summons and complaint in the Chancery Division. Two months later, the Borough filed an answer and counterclaim, seeking vacation of the award and asserting twenty affirmative defenses. The PBA claimed that the Borough's counterclaim was time-barred as beyond the three-month limit. The Chancery Division agreed and confirmed the award.

In a divided opinion, the Appellate Division affirmed in part and reversed in part. 305 *N.J. Super.* at 454, 703 *A.*2d 1. The court concluded that the failure of either party to institute a timely summary action prevented both the PBA's confirmation and the Borough's vacation of the award. *Id.* at 457, 703 *A.*2d 1. Consequently, the court affirmed the Chancery Division's refusal to

vacate.and reversed its confirmation of the award. *Id.* at 466, 703 *A.*2d 1.

Believing that common-law arbitration survived the passage of the Act, Judge Rodríguez would have remanded the matter to the Chancery Division to proceed as a common-law action to confirm. *Id.* at 469, 703 *A.*2d 1.

## II.

### A.

A striking feature of the contemporary resolution of disputes is a growing recourse to alternatives to judicial decision. With increasing frequency, parties to commercial disagreements, labor disputes, and other controversies resort to arbitration and mediation for dispute resolution. The speed, efficiency, and economy of arbitration appeal to many as an alternative to judicial proceedings.

Arbitration has a long history in Anglo–American law. In 1794, the New Jersey Legislature adopted a statute recognizing arbitration as a form of dispute resolution. Under that statute, court-ordered arbitration, known as "reference," emerged as the principal form of arbitration. Over time, parties turned increasingly to common-law arbitration as a means of resolving disputes. James B. Boskey, *A History of Commercial Arbitration in New Jersey: Part I*, 8 *Rut.-Cam. L.J.* 1, 8–10, 14–15 (1976). Under common-law arbitration, parties could agree on their own initiative to submit a matter to an arbitrator of their choice. An abiding problem, however, was difficulty in enforcing arbitration awards. *Id.* at 13–15, 21–22.

In 1923, responding to the need for a more modern form of arbitration, the Legislature adopted the Act. Through streamlined procedures and expedited enforcement methods, the Act attempts to meet the need for an alternative to court actions. Among other salutary improvements, the Act authorizes agreements to arbi-

trate, thereby augmenting the power of parties to control the details of arbitration through their own contracts.

Nothing in the Act's provisions or history purports to repeal common-law arbitration. As we wrote in *Heffner v. Jacobson,* 100 *N.J.* 550, 498 *A.*2d 766 (1985): "Since the enactment of the Arbitration Act, New Jersey courts have recognized the continuing existence of common-law arbitration. That [ ] comports with the majority view elsewhere that arbitration statutes have not abolished common-law arbitration." *Id.* at 554, 498 *A.*2d 766 (citations omitted).

### B.

█ Arbitration should be an alternative to, not the first step in, a judicial proceeding. Consistent with the goal of constituting arbitration as an alternative method of dispute resolution, judicial review of arbitration awards is limited. Generally speaking, a court may invalidate an arbitration award for the grounds specified in *N.J.S.A.* 2A:24–8, most notably fraud, corruption, or undue means. *See also In re Arbitration Between: Tretina Printing v. Fitzpatrick & Assocs.,* 135 *N.J.* 349, 357–59, 640 *A.*2d 788 (1994) (adopting standard to vacate arbitration awards only for fraud, corruption, or similar wrongdoing by arbitrators).

█ Under *N.J.S.A.* 2A:24–7, either party may move to confirm an award within three months of the date of its delivery. Once confirmed, the award is as conclusive as a court judgment. *N.J.S.A.* 2A:24–10; *see also* James B. Boskey, *A History of Commercial Arbitration in New Jersey: Part II,* 8 *Rut.-Cam. L.J.* 284, 292–93 (1977) (describing history of enforceability of confirmed arbitration awards).

█ A party may seek to vacate or modify an award either in response to an action to confirm or in an independent action. In either case, the action must be instituted within three months of the award's delivery. *N.J.S.A.* 2A:24–8, –9. If an action to confirm is not so instituted, the party seeking to confirm, may not avail

itself of a summary action. *Heffner, supra*, 100 *N.J.* at 555, 498 *A.*2d 766 (party seeking confirmation out of time limited to plenary action unless court grants motion to proceed summarily); *Taylor v. Ford Motor Co.*, 703 *F.*2d 738, 744–45 (3d Cir.1983) (holding that under New Jersey law, prevailing party does not lose right to enforce award by not confirming within statutory period, but loses right automatically to use summary procedure).

■ For the party seeking to vacate or modify an arbitration award, the failure to act results in the loss of both the right to institute a summary vacation action and the right to counterclaim in a plenary confirmation action. *N.J.S.A.* 2A:24–8, –9. *City of Atlantic City v. Laezza*, 80 *N.J.* 255, 268 n. 2, 403 *A.*2d 465 (1979) (party seeking to vacate award precluded after three months).

### C.

Because the Appellate Division determined that the Act provides the exclusive method of confirming or vacating an arbitration award, the court ruled that the parties could neither confirm nor vacate the PBA's award once three months had passed. 305 *N.J.Super.* at 459–60, 703 *A.*2d 1. Nothing in the Agreement, however, limits the parties to a summary proceeding to confirm or vacate under the Act. If the parties had intended to limit themselves to a summary action, they could have agreed, either expressly or impliedly, that the Act was to provide the sole method of enforcing an award. *See Heffner, supra*, 100 *N.J.* at 555, 498 *A.*2d 766.

Contrary to the Appellate Division's holding, 305 *N.J.Super.* at 460, 703 *A.*2d 1, the Agreement between the PBA and the Borough did not specify that their arbitration would be conducted in accordance with the Act alone. The parties agreed only to submit disputes for arbitration to PERC arbitrators and in accordance with PERC rules.

Nothing in PERC's enabling legislation or regulations prevents parties availing themselves of PERC arbitrators from using common-law procedures. By reaching a contrary conclusion, the Appellate Division opinion blurs the distinction between "grievance arbitration," the subject matter of this appeal, and "interest arbitration." *See id.* at 460–61, 703 *A.*2d 1.

▮▮ Generally speaking, interest arbitration concerns the resolution of disputes about new collective bargaining agreements, and grievance arbitration concerns disputes that arise under those agreements. Interest arbitration is essentially a creature of statute. With interest arbitration, PERC provides arbitrators who must apply specific uniform criteria and adhere to strict deadlines. *N.J.S.A.* 34:13A–16; *N.J.A.C.* 19:16–5.6, –5.15. In contrast, PERC's regulations do not provide any procedures or time lines for grievance arbitration. Indeed, PERC's regulations do not even refer to *N.J.S.A.* 2A:24–7. Thus, the regulations do not evince the intent to convert an agreement to arbitrate grievances into an agreement to use the statutory proceeding applicable to interest arbitration. As we have stated previously, "Where, as in the present case, the contract is silent on whether arbitration is to proceed under the Act, parties seeking confirmation beyond the three-month statutory period should be permitted to seek confirmation in a proceeding brought not in a summary manner, but as in other actions." *Heffner, supra,* 100 *N.J.* at 555, 498 *A.*2d 766 (citations omitted).

## D.

▮▮ The Appellate Division misconstrued the Act's restriction on defenses to confirmation as implying a legislative intent to limit parties seeking to confirm or vacate an arbitration award to the summary action contemplated by *N.J.S.A.* 2A:24–7. 305 *N.J.Super.* at 458–59, 703 *A.*2d 1. In *Tretina, supra,* 135 *N.J.* at 364, 640 *A.*2d 788, we held that an arbitration award may be vacated only on the limited grounds specified in *N.J.S.A.* 2A:24–8 or because the award is contrary to public policy. *Tretina, supra,* 135 *N.J.* at

364–65, 640 *A*.2d 788. A public-sector arbitration award also may be set aside because of a mistake of law. *Ibid.* That special rule applies "because public policy demands that a public-sector arbitrator, who must consider the effect of a decision on the public interest and welfare, issue a decision in 'accordance with law." *Id.* at 365, 640 *A*.2d 788 (citation omitted).

■ *Perini Corp. v. Greate Bay Hotel & Casino,* 129 *N.J.* 479, 610 *A*.2d 364 (1992), took a more expansive view of the available defenses. *Id.* at 491–97, 610 *A*.2d 364. *Tretina,* however, rejected *Perini. Tretina, supra,* 135 *N.J.* at 358–59, 640 *A*.2d 788. Nevertheless *Tretina's* restriction of defenses to those specified in the Act, does not imply that actions to confirm, modify, or vacate arbitration awards are similarly restricted to the Act's summary procedures. Indeed, *Heffner* expressly recognized the continuing existence of a common-law action to confirm an award. *Heffner, supra,* 100 *N.J.* at 554, 555, 498 *A*.2d 766; *see also Taylor, supra,* 703 *F*.2d at 741. Accordingly, we hold that a party may institute a common-law plenary action to confirm an award after the expiration of the three-month limit specified by *N.J.S.A.* 2A:24–7.

Permitting common-law confirmation beyond the Act's three-month period comports with judicial construction of the analogous provision of the Federal Arbitration Act (FAA), 9 *U.S.C.A.* § 9, which authorizes summary confirmation "within one year after the award." As one authority states, the federal act supplements, but does not supplant, common-law confirmation. Macneil et al., *Federal Arbitration Law: Agreements, Awards, and Remedies Under the Federal Arbitration Act* § 38.2.2.2 (1994); *see also* 6 *C.J.S. Arbitration* § 137 (1975) (stating that absent agreement to contrary, statutory remedy to enforce arbitration awards does not prevent action at law).

Sound policy considerations also support the continuing availability of common-law confirmation. Depriving the parties of common-law confirmation would consign them to a legal limbo. After arbitration, they would be no closer to a resolution than they

were before beginning the proceeding. The parties would have nothing to show for their time and expense other than an award that they could not modify, vacate, or confirm. Such a result is not fair, efficient, or reasonable. Depriving the prevailing party of the right to common-law confirmation, moreover, would redound to the benefit of the losing party. As a practical matter, the prevailing party would be remitted to the position that it held before obtaining the award. Conversely, the losing party, by doing nothing, would erase its loss. Although denial of common-law enforcement would provide an incentive for the prevailing party to make a timely application to confirm, nothing in the Act's terms or history suggests that the Legislature intended so harsh a rule.

Strict enforcement of the three-month limit on a summary action to vacate, on the other hand, supports arbitration as an alternative, not an invitation, to litigation. An action to vacate challenges the underlying validity of the award and disrupts arbitration as a speedy and efficient method of resolving disputes. *Service Employees Int'l Union, Local 36, AFL–CIO v. Office Ctr. Servs., Inc.*, 670 *F.*2d 404, 412 (3d Cir.1982). Thus, the three-month limit on an action to modify or vacate an award provides the losing party with the incentive to take timely action.

Other legislative schemes likewise treat the losing party less favorably than the prevailing party. The Uniform Arbitration Act (UAA), 7 *U.L.A.* 1–469, includes no time limit at all for confirmation, UAA § 11, but imposes a ninety-day limit on actions to vacate, modify, or correct an award, UAA §§ 12, 13. Most state statutes impose a time limit on an action to vacate, but not on one to confirm. Macneil et al., *supra*, § 38.3.2.3.

Although the FAA, 9 *U.S.C.A.* §§ 1–307, imposes time limits on both parties, the limit is different for the winner than for the loser. FAA § 9 permits an action to confirm an award within one year of the date of the award. The time limit for application to vacate the award, FAA § 10 or to modify or correct the award, FAA § 11, however, is limited to three months.

The Borough contends that if the PBA has a common-law right to seek confirmation in a plenary proceeding, then the Borough must receive a corresponding right to file an answer and counterclaim. We perceive a distinction between the right to counterclaim and the right to assert affirmative defenses.

Barring a losing party from asserting affirmative defenses in a plenary action to confirm would provide a powerful incentive for that party to act promptly to vacate the award. The cost of the bar, however, would be that the losing party could not assert, for example, that the award is contrary to public policy. Enforcement of such an award against a public entity could result in the undue expenditure of public funds. Avoiding that result comports with careful judicial scrutiny of arbitration awards that implicate public policy. *See Weiss v. Carpenter, Bennett & Morrissey,* 143 *N.J.* 420, 443, 672 *A.*2d 1132 (1996).

Fortifying the finality of awards enhances the utility of arbitration as a means of resolving disputes, particularly those between parties with ongoing relationships, such as an employer and a labor union. In addition to a procedure that is fast, flexible, and efficient, the parties need one that is final. The least efficient resolution of a dispute is one that amounts to no resolution. Denial of confirmation merely because the prevailing party did not act to confirm within three months is tantamount to rendering no decision. The parties would be compelled to arbitrate again or to initiate a civil action. Either alternative is unsatisfactory.

If parties wish to confine themselves to the Act's time limit, they may so specify in their agreement. *Heffner, supra,* 100 *N.J.* at 555, 498 *A.*2d 766. Otherwise, the prevailing party retains the common-law right to seek confirmation in a plenary proceeding within the six-year statute of limitations applicable to contracts. *N.J.S.A.* 2A:14-1. Although the losing party may not institute an action to vacate an award after the expiration of three months, it may file an answer asserting affirmative defenses. Otherwise, the prevailing party could strip the losing party of any defense simply by waiting three months. Of course, both parties

retain the right to institute a summary action to vacate or to confirm within the time limit of the Act.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Chancery Division.

*For reversal and remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—none.