**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3117-20

THE ATLANTIC CITY SUPERIOR
OFFICERS' ASSOCIATION,

    Plaintiff-Appellant,

v.

CITY OF ATLANTIC CITY,
STATE OF NEW JERSEY, NEW
JERSEY DIVISION OF LOCAL
GOVERNMENT SERVICES IN
THE DEPARTMENT OF
COMMUNITY AFFAIRS,
MELANIE WALTER, Director of
the Division of Local Government
Services in the Department of
Community Affairs in [her] official
capacity,

    Defendants-Respondents.

_____

Argued June 9, 2022 – Decided June 30, 2022

Before Judges Whipple, Geiger, and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-3538-20.

Kevin D. Jarvis argued the cause for appellant (O'Brien, Belland & Bushinsky, LLC, attorneys; Kevin D. Jarvis and David F. Watkins, Jr., on the briefs).

Ronald L. Israel argued the cause for respondents (Chiesa Shahinian & Giantomasi, PC, attorneys; Ronald L. Israel and Melissa F. Wernick, on the brief).

PER CURIAM

In this case of first impression, we are asked to determine whether the Municipal Stabilization and Recovery Act (MSRA), L. 2016, c. 4, allows the State of New Jersey to vacate an arbitration award resulting from a collective negotiations agreement (CNA) [1] involving a "municipality in need of stabilization and recovery." More specifically, we address whether the State can exercise this authority via N.J.S.A. 34:13A-16(j) when the CNA here was expired but still in force, and the accumulated sick leave compensation benefits allegedly vested prior to when Atlantic City (the City) was designated as in need of stabilization and recovery. Because the Legislature clearly granted the State such broad authority, intended that MSRA supersede

---

[1] The record appears to use the terms "collective negotiations agreement" (CNA) and "collective bargaining agreement" (CBA) interchangeably. For clarity, we use the term "collective negotiations agreement" which conforms with MSRA and the Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -64.

arbitration law, and instructed the courts to construe MSRA liberally given the State's interest in addressing municipalities' severe fiscal distress, we affirm.

The facts are undisputed. Plaintiff Atlantic City Superior Officers' Association (ACSOA) appeals from a May 21, 2021 order and accompanying memorandum dismissing its complaint against the City; the State of New Jersey; the New Jersey Division of Local Government Services (DLGS) in the Department of Community Affairs (DCA); and Melanie Walter, the DLGS Director (the Director) in her official capacity (collectively, the State).

On March 14, 2013, Public Employment Relations Commission (PERC) Interest Arbitrator Michael J. Pecklers issued a decision and arbitration award setting forth certain terms of a CNA between the City and ACSOA covering the period from January 1, 2013 through December 31, 2015. The award provided, in pertinent part:

> ARTICLE XXVII SICK AND INJURED shall be modified to include the following language at the end of paragraph [two]: A cap of $15,000.00 shall apply to all payments for accumulated sick leave made to employees hired by the City of Atlantic City after January 1, 2013 and subsequently promoted. Any current employees hired before January 1, 2013 who are subsequently promoted will be covered by the language in the expired CNA.

A-3117-20

On September 11, 2013, the City adopted a resolution authorizing the mayor to execute the CNA between the City and the ACSOA, and the parties signed the agreement.

On May 26, 2016, the City and the ACSOA signed a memorandum of agreement (MOA). The MOA provided the City may promote officers from Sergeant to Lieutenant or Lieutenant to Captain with no increase in pay until the parties and the State ratify a salary increase. The MOA did not apply to any other terms of the parties' CNA.

The following day, the Legislature enacted MSRA. On June 6, 2016, Charles Richman, then the DCA Commissioner (the Commissioner), made a final determination designating the City as a "municipality in need of stabilization and recovery" pursuant to the MSRA.

In July 2016, Jerry Barnhart and James Sarkos were promoted from Lieutenant to Captain in the Atlantic City Police Department (ACPD). Under the terms of the CNA then in effect:[2]

> Any officer promoted to the rank of Captain after July 1, 2004, will be paid for all his/her accumulated sick leave as a lump sum as of the date the officer is promoted to Captain. The lump sum shall be compensated at the full rate of pay in effect for that

---

[2] The CNA covering the period from 2013 through 2015 remained in effect because the parties had not reached a successor agreement.

A-3117-20

officer as a Lieutenant on the date of the officer's promotion to Captain.

The City did not pay Barnhart and Sarkos their accumulated sick leave as a lump sum pursuant to the payment schedule set forth in the CNA. On October 24, 2016, the Policemen's Benevolent Association (PBA) Local 24, ACSOA, and the City agreed to terms for respective successor CNAs covering the period of January 1, 2016 through December 31, 2018, which the parties memorialized and ratified, but the State did not approve.

On November 9, 2016, the DCA Local Finance Board voted to vest powers under the MSRA to then-DLGS Director Cunningham (the Takeover).

On December 19, 2016, DLGS, the City, PBA, ACSOA, and the ACPD Chief of Police met to discuss the State's proposed changes to the CNAs. "The State informed plaintiffs that unless the parties reach an agreement, it would unilaterally impose changes on the ACPD pursuant to [MSRA]." PBA Local 24 v. Christie, No. ATL-L-554-17 (Law Div. May 23, 2017) (slip. op. at 12).

On March 13, 2017, following unsuccessful negotiations to come to an agreement with the PBA and ACSOA, the State notified plaintiffs that a number of reforms would be effective March 15, 2017. The change pertinent to this case is the elimination of the "lump sum payment of all accumulated sick leave upon promotion to Captain at the rate of pay as a Lieutenant,

A-3117-20

effective March 15, 2017."  In total, the State's reforms were estimated to save the City approximately $19 to $20 million.

On March 17, 2017, the PBA and ACSOA filed a complaint against then-Governor Christopher Christie, various state officials, and the City seeking to prevent those defendants from implementing the State's changes to their CNAs.

On May 23, 2017, Judge Julio L. Mendez denied injunctive relief in part, and granted temporary injunctive relief in part.  PBA Local 24.  The court determined that the State's proposal to completely eliminate terminal leave lump sum payments less than $15,000 was unreasonable, but the proposal to eliminate terminal leave lump sum payments in excess of $15,000 was reasonable and consistent with MSRA.

As to accumulated sick leave upon retirement, Judge Mendez wrote:

> The court finds that plaintiffs cannot establish that they have a property right to terminal leave lump sum payouts.  Plaintiffs present no cases to support their argument that the Takings Clause of the New Jersey Constitution applies to terminal leave payouts or even other rights generated by CNAs.  It is important to highlight that plaintiffs are not losing any of their sick time.  The proposal calls for the elimination of a lump sum payment of accumulated sick leave upon retirement.  The purpose of sick leave is to give an employee the opportunity to continue to receive a salary while they are out on disability.  This could

6

happen at any time. An employee who may have 300 days accumulated may face a very serious illness and have to use all of their sick time before they retire. In this court's view, the vested right is the accumulated sick days, not the amount of money that those days represent. The proposal does not in any way impact the accumulated sick days.

On June 7, 2017, the State issued an implementation memorandum modifying the City's CNAs with the PBA and ACSOA.[3]

On January 10, 2018, the PBA, ACSOA, and the City entered into a stipulation of dismissal with prejudice and without costs. Thereafter, the City and ACSOA and the PBA entered into a settlement agreement, which was filed with the court on January 16, 2018. The settlement agreement provided, in pertinent part:

> 6. While the City contends that it had the right under the MSRA and all other applicable laws to terminate all terminal leave payments, and will continue to litigate this issue in other pending litigation, for purposes of settling this lawsuit, the parties agree that the terminal leave payouts for all police officers and superior officers will be a maximum of $15,000.00 at the time of retirement in accordance with N.J.S.A. 11A:6-19.2.
>
> . . . .
>
> 9. The parties agree that the [implementation memorandum] dated June 7, 2017, which modified the

---

[3] The memorandum is not in the record.

collective negotiations agreements with PBA Local 24 and the [ACSOA] shall remain in full force and effect as modified by this Settlement Agreement. All terms contained in the [memorandum] dated June 7, 2017 as modified by this Settlement Agreement shall be incorporated into the Collective Negotiations Agreements between PBA Local 24 and the [ACSOA] including, but not limited to, that the Settlement Agreement is in effect through December 31, 2021
. . . .

On May 25, 2018, arbitrator Ruth M. Moscovitch held a hearing in Atlantic City. The issue presented was:

> Whether the City, by failing to pay [Barnhart and Sarkos] their accumulated sick leave upon their promotions to the rank of Captain on July 1, 2016, violated the terms of the [CNA] between the parties, in light of [MSRA] signed into law on May 27, 2016, the June 7, 2017 [memorandum], and/or the Superior Court supervised settlement agreement of January 11, 2018. If so, what shall the remedy be?

On August 21, 2018, Moscovitch entered an opinion and award ordering the City to pay Barnhart and Sarkos accumulated sick leave payments as of the dates of their promotion, July 1, 2016. The arbitrator determined that Barnhart was due $132,046.43 and Sarkos between $97,586.95 and $110,252.98.

By letter dated October 18, 2018, Director Walter wrote a letter to Atlantic City Mayor Frank M. Gilliam, Jr., and City Council President Marty Small stating:

Following exhaustive consideration of the City's budgetary needs, contractual obligations, and long-term financial projections, I have concluded that the City's recovery has progressed sufficiently to support certain previously suspended terminal leave payouts for pre- and post-MSRA employee retirements. To this end, the City may now initiate terminal leave payments for both pre[-] and post[-]MSRA employees.

Thereafter, on October 24, 2018, the City adopted a resolution authorizing payment to retired employees for their accumulated sick time (terminal leave).

However, on December 7, 2018, Walter notified plaintiff's counsel and the arbitrator:

For the reasons provided below, I hereby exercise the power vested in me by the Municipal Stabilization and Recovery Act (MSRA), codified at N.J.S.A. [52:27BBBB-1] to deny approval of the arbitration award. In accordance with the MSRA, the arbitration award is not binding upon the parties to the grievance and has no force and effect. Accordingly, Sarkos and Barnhart shall not receive any payment for accumulated sick leave by virtue of their promotion to Captain on July 1, 2016. However, both parties will have the ability to use this accumulated leave.

Walter explained that N.J.S.A. 52:27BBBB-5(g) and (i) empowered her as Director "to take any steps to stabilize the finances, restructure the debts, or assist in the financial rehabilitation and recovery of the municipality in need of stabilization and recovery, including, but not limited to" unliterally modifying

CNAs, except those related to school districts, and "unliterally modifying wages, hours, or any other terms and conditions of employment" with respect to any expired CNA. She also explained that N.J.S.A. 34:13A-16(j) provides that an arbitration award will not be binding without the Director's approval.

Thereafter, ACSOA filed a complaint against the State to confirm the arbitration award, alleging that the State violated the MSRA by failing to comply with the arbitration award. The State moved to dismiss ACSOA's complaint for failure to state a claim pursuant to Rule 4:6-2(e), which ACSOA opposed. On May 18, 2021, Judge John C. Porto conducted telephonic oral argument and granted the State's motion, dismissing ACSOA's complaint with prejudice with a thorough and well-reasoned written decision. This appeal followed.

We "review[] de novo the trial court's determination of the motion to dismiss under Rule 4:6-2(e)," for "failure to state a claim upon which relief can be granted." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 108 (2019). In considering a Rule 4:6-2(e) motion, the court "examines 'the legal sufficiency of the facts alleged on the face of the complaint,' . . . limiting its review to 'the pleadings themselves.'" Ibid. The test for determining the adequacy of a pleading is "whether a cause of action is

'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). Plaintiffs are entitled to every reasonable inference of fact. Indep. Dairy Workers Union v. Milk Drivers Local 680, 23 N.J. 85, 89 (1956). "If the court considers evidence beyond the pleadings in a Rule 4:6-2(e) motion, that motion becomes a motion for summary judgment, and the court applies the [summary judgment] standard of Rule 4:46." Dimitrakopoulos, 237 N.J. at 107. We review the trial court's grant or denial of a motion for summary judgment de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

Plaintiff argues that the trial court erred in finding that the State may vacate any arbitration award pursuant to N.J.S.A. 34:13A-16(j) and need not demonstrate its decision is reasonable and consistent with "the standard initially set forth by Judge Mendez in the [International Association of Fire Fighters (IAFF)] litigation and later reaffirmed in the police union's 2017 action." Plaintiff also argues "[the State]'s refusal to comply with their pre-MSRA contractual obligations is completely unreasonable and in violation of the MSRA and is sufficiently plead in the complaint." In sum, plaintiff argues N.J.S.A. 34:13A-16(j) does not apply to the arbitration award, and contrary to

the trial court's conclusions, the Director does not have "unlimited power" to vacate, reject, modify, or confirm arbitration awards. As a result, plaintiff contends traditional arbitration law applies, requiring the court to confirm the award.

In the alternative, plaintiff argues that, if the Director may vacate arbitration awards, the Director may do so only prospectively as to arbitration awards "accruing and vested" after the November 9, 2016 Takeover. Thus, because Barnhart and Sarkos's accumulated sick leave "vested" on July 1, 2016, the court was required to confirm the arbitration award. We disagree.

Judge Porto wrote:

> There is nothing in N.J.S.A. 34:13A-16(j) to even suggest a limitation in its application to any arbitrations for contractual rights to a period after a municipality is placed under the MSRA's provisions. The [c]ourt finds the [L]egislature's use of the words "any arbitration award" expresses very broad, unequivocal terms and is not limited in application. While undoubtedly a municipality cannot take advantage of N.J.S.A. 34:13A-16(j) until after it is deemed a municipality in need of stabilization of recovery, but once a municipality is so designated, the [c]ourt finds the statute does not limit the Director's powers to only arbitrations for contractual rights arising after the MSRA's powers are triggered. The [c]ourt cannot view this legislation in a vacuum. . . . [T]his [c]ourt finds there is no limitation or any intended limitation to be placed upon the Director precluding him or her from exercising the power to

12

decline or approve <u>any</u> arbitration for contractual rights even those that arose and were completely vested prior to a takeover pursuant to MSRA. It is clear to this [c]ourt that the MSRA provided the Director with broad, comprehensive and extensive powers to execute a plan to achieve economic stability in the City. . . .

The [c]ourt finds the plain language of N.J.S.A. 34:13A-16(j) clearly states that it is applicable to any arbitration award including the award at issue here. The [c]ourt cannot re-interpret N.J.S.A. 34:13A-16(j) to say the Legislature intended to limit the powers therein when by their chosen words clearly reflects unlimited powers.

Furthermore, Plaintiff's argument that the common [] law permits this [c]ourt to confirm the Arbitration Award runs contrary to our well-settled principles. The Court recognizes the ability of courts to confirm common law arbitration continued after the enactment of the Arbitration Act[, N.J.S.A. 2A:24-1 to -11]. <u>See</u> <u>Policeman's Benevolent Ass'n, Local 292 v. Borough of N. Haledon</u>, 158 N.J. 392, 400-04 (1999). However, the MSRA serves to limit the [c]ourt's ability to do so in this instance. "The common law is the collection of judicially crafted principles— developed in the crucible of the adversarial process— that govern matters that do not fall within the realm occupied by the Legislature." <u>Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Ass'n</u>, 215 N.J. 522, 545 (2013). "Legislative enactments are never subservient to the common law when the two are in conflict with each other." <u>Ibid.</u> Those pronouncements are appropriate here.

Utilizing the common [] law to confirm an arbitration award in which the Director of the DLGS

13

expressly denied pursuant to the MSRA would render the MSRA subservient to the common law and to the interpretation of judges.

. . . .

This [c]ourt finds that it would run counter to these legislative findings to permit this court or any future court to use the common law to override a decision from the Director who was authorized to oversee prudent fiscal management of local governments and remedy the financial concerns that caused the City to be deemed in need of stabilization and recovery. Indeed, using the common law to override the express statutory authority to confirm and enforce the Arbitration Award would, in this [c]ourt's opinion, erode and undermine the fiscal integrity of the City and compromise the uniform compensation system that the City lacked before MSRA. The MSRA gave the Director of the DLGS expansive powers to stabilize and set municipalities, such as the City, upon the path of fiscal recovery. Using the common law to, in essence, circumvent those expansive statutory powers essentially renders the MSRA a nullity and contravenes the legislative intent. For that reason, the [c]ourt declines to accept the invitation to circumvent the delegated statutory powers.

As Judge Porto thoroughly explained, MSRA sets forth the governing framework in this case. The Legislature explained the rationale for enacting MSRA:

a. The short and long-term fiscal stability of local government units is essential to the interests of the citizens of this State to assure the efficient and effective provision of necessary governmental services

14

vital to public health, safety, and welfare, including the fiscal health of our State's municipalities.

b.  In certain extreme cases, local governments that experience severe fiscal distress become incapable of addressing the circumstances that led to that extraordinary distress or of developing a comprehensive plan for financial rehabilitation and recovery.

c.  It is necessary and appropriate for the State to take action to assist local governments experiencing severe budget imbalances and other conditions of severe fiscal distress or emergency by requiring prudent fiscal management and operational efficiencies in the provision of public services. . . .

[N.J.S.A. 52:27BBBB-2.]

Section 6 of the MSRA amended the Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -64, and added paragraph N.J.S.A. 34:13A-16(j), which states:

The Local Finance Board may provide that any arbitration award, including but not limited to an interest arbitration award, involving a municipality deemed a "municipality in need of stabilization and recovery" pursuant to section 4 of [L. 2016, c. 4, N.J.S.A. 52:27BBBB-4] shall be subject to the review and approval of the Director of the Division of Local Government Services in the Department of Community Affairs, including those on a collective negotiations agreement where the matter has been submitted to an arbitrator pursuant to law, and no such award shall be binding without the approval of the director.  Nothing in this subsection shall be construed

to limit the scope of any general or specific powers of the Local Finance Board or the [D]irector set forth in [L. 2016, c. 4, N.J.S.A. 52:27BBBB-4].

The Legislature instructed the courts to liberally construe the MSRA "to give effect to its intent that severe fiscal distress in municipalities in need of stabilization and recovery shall be addressed and corrected." N.J.S.A. 52:27BBBB-13.

Our review of rulings of law and issues regarding the applicability, validity or interpretation of laws, statutes, or rules is de novo. In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020). When construing a statute, our "paramount goal" is to discern the Legislature's intent. DiProspero v. Penn, 183 N.J. 477, 492 (2005). We must "look first to the statute's actual language and ascribe to its words their ordinary meaning." Kean Fed'n of Teachers v. Morell, 233 N.J. 566, 583 (2018). "'[T]he best indicator of [the Legislature's] intent is the statutory language,' thus it is the first place we look." Richardson v. Bd. of Trs., PFRS, 192 N.J. 189, 195 (2007) (first alteration in original) (quoting DiProspero, 183 N.J. at 492). "If the plain language leads to a clear and unambiguous result, then our interpretive process is over." Ibid.

Here, as an initial matter, plaintiff challenges the trial court's conclusion that the Director has "unlimited power" to vacate arbitration awards involving

municipalities designated as in need of stabilization and recovery under MSRA. We need not reach this broad question. Rather, our narrow inquiry is whether the Director may vacate this arbitration award pursuant to the MSRA. We agree with Judge Porto that the Director may.

N.J.S.A. 34:13A-16(j) controls over arbitration law, and a plain reading permits the Director to vacate the arbitration award in this case. When the Legislature enacted MSRA in 2016, New Jersey's public policy favoring arbitration was well-established. See L. 1951, c. 344, codified at N.J.S.A. 2A:24-1 to -11; Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002) ("[W]e rely on the well-recognized national policy and the established State interest in favoring arbitration."). Indeed, our Supreme Court emphasized:

> Courts have engaged in an extremely deferential review when a party to a collective bargaining agreement has sought to vacate an arbitrator's award. The well-established standard . . . is that "an arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'" . . . . That high level of deference springs from the strong public policy favoring "the use of arbitration to resolve labor-management disputes."
>
> [Policemen's Benev. Ass'n v. City of Trenton, 205 N.J. 422, 428-29 (2011) (citations omitted).]

Yet, against this backdrop, the Legislature circumscribed the State's public policy favoring arbitration in an effort to strike a balance with the

17

State's interest in addressing municipalities' severe fiscal distress. The plain language of N.J.S.A. 34:13A-16(j) permits the State to set aside any arbitration award:

> The Local Finance Board may provide that any arbitration award . . . involving a municipality deemed a "municipality in need of stabilization and recovery" . . . shall be subject to the review and approval of the Director of the Division of Local Government Services in the Department of Community Affairs, including those on a collective negotiations agreement where the matter has been submitted to an arbitrator pursuant to law, and no such award shall be binding without the approval of the director. . . .

"[L]ook[ing] first to the statute's actual language and ascrib[ing] to its words their ordinary meaning," Morell, 233 N.J. at 583, N.J.S.A. 34:13A-16(j) clearly requires the Director's approval for an arbitration award involving a "municipality in need of stabilization and recovery" to be valid and enforceable. Even if we assume for the sake of the argument that N.J.S.A. 34:13A-16(j) is ambiguous, the Legislature instructed the courts to liberally construe MSRA "to give effect to its intent that severe fiscal distress in municipalities in need of stabilization and recovery shall be addressed and corrected." N.J.S.A. 52:27BBBB-13. Lest there be any doubt as to the Legislature's intention to grant broad, superseding authority to the State to protect financially distressed municipalities, it additionally directed that "[t]o

the extent any inconsistency exists between the terms of [L. 2016, c. 4 (N.J.S.A. 52:27BBBB-1 et al.)] and other applicable laws, the terms of [L. 2016, c. 4 (N.J.S.A. 52:27BBBB-1 et al.)] shall prevail." N.J.S.A. 52:27BBBB-14. Together, these provisions "lead[] to a clear and unambiguous result" and conclude our interpretative process. Richardson, 192 N.J. at 195.

Furthermore, the enactment of N.J.S.A. 34:13A-16(j) has primacy over case law on arbitration. "Legislative enactments are never subservient to the common law when the two are in conflict with each other." Farmers Mut. Fire Ins. Co., 215 N.J. at 545. Therefore, no other reading of N.J.S.A. 34:13A-16(j) is permissible.

Plaintiff's insistence that the State is "bound by the constraints of reasonableness otherwise controlling the MSRA," is unpersuasive with respect to the question of whether the State may vacate the arbitration award under N.J.S.A. 34:13A-16(j). N.J.S.A. 34:13A-16(j) plainly contains no reasonableness standard. Further, plaintiff inappropriately relies on PBA Local 24, which does not paint with such a broad brush as plaintiff asserts. That opinion's reasoning and conclusions regarding the reasonableness of the Director's authority pertains only to N.J.S.A. 52:27BBBB-5(a)(3)(g). Id. (slip

19

op. at 29-30). Thus, the issues in that case did not concern N.J.S.A. 34:13A-16(j) and are therefore inapplicable here.

Finally, that the Director modified the CNA's term on accumulated sick leave consistent with MSRA, the July 1, 2016 "vesting" of Barnhart and Sarkos's accumulated sick leave lump sum payments is inconsequential. MSRA permits the Director to unilaterally modify this contract term.

N.J.S.A. 52:27BBBB-5(3)(i) applies squarely to the facts of this case. That provision provides:

> (3) The authorities granted to the director by the Local Finance Board pursuant to this section shall extend to any and all actions that, in the exclusive discretion of the director, may help stabilize the finances, restructure the debts, or assist in the financial rehabilitation and recovery of the municipality in need of stabilization and recovery. Notwithstanding the provisions of any other law, rule, regulation, or contract to the contrary, the director shall have the authority to take any steps to stabilize the finances, restructure the debts, or assist in the financial rehabilitation and recovery of the municipality in need of stabilization and recovery, including, but not limited to:
>
> . . . .
>
> (i) with respect to any expired collective negotiations agreement to which the municipality in need of stabilization and recovery is a party, unilaterally modifying

> wages, hours, or any other terms and conditions
> of employment. . . .

[N.J.S.A. 52:27BBBB-5(3)(i) (2016).]

When Barnhart and Sarko were promoted on July 1, 2016, the CNA covering the period from January 1, 2013 through December 31, 2015 was expired. By letter dated December 7, 2018, the Director modified the contract term for a lump sum payment for accumulated sick leave upon promotion from Lieutenant to Captain. Specifically, the Director provided that such promoted officers would not receive lump sum payments, but would be able to use their sick leave days. The Legislature's enactment of N.J.S.A. 52:27BBBB-5(3)(i) contemplated precisely the circumstance here where the State may unilaterally modify the terms and conditions of employment in connection with an expired CNA.

Applying the principles of statutory interpretation, the Legislature's intent by the plain language of this provision is apparent. The State may "unilaterally modify" any term or condition of employment where the CNA with a municipality in need of stabilization and recovery is expired. This "clear and unambiguous result" concludes our interpretative process. Richardson, 192 N.J. at 195. Thus, MSRA permits the Director to unliterally

21

modify the contract term for accumulated sick leave upon from Lieutenant to Captain as that CNA expired.

Alternatively, N.J.S.A. 52:27BBBB-5(3)(g) may also apply to this case. Because the CNA covering the period from January 1, 2013 through December 31, 2015 remained technically effective when Barnhart and Sarkos were promoted, the State still permissibly exercised its statutory authority to unilaterally modify the contract term on accumulated sick leave.

> (3) [T]he director shall have the authority to take any steps to stabilize the finances, restructure the debts, or assist in the financial rehabilitation and recovery of the municipality in need of stabilization and recovery, including, but not limited to:
>
> . . . .
>
> (g) unilaterally modifying, amending, or terminating any collective negotiations agreements . . . to which the municipality is a party, or unilaterally modifying, amending, or terminating the terms and conditions of employment during the term of any applicable collective negotiations agreement, or both, provided that the director determines that the modifications, amendments, or terminations are reasonable and directly related to stabilizing the finances or assisting with the fiscal rehabilitation and recovery of the municipality in need of stabilization and recovery. . . .

[N.J.S.A. 52:27BBBB-5(3)(g) (2016).]

We reject plaintiff's contention that the broad grant of authority to the State under the statutory framework violates New Jersey's Contract Clause, N.J. Const., Art, IV, §VII, ¶ 3. Under that Clause, the Legislature cannot pass "any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract which existed when the contract was made." N.J. Const., Art. IV, § VII, ¶ 3. However, "[t]he prohibition against impairment of contracts under the federal and state constitutions is not absolute. It 'must be accommodated to the inherent police power of the states to safeguard the vital interests of their residents.'" In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, Stranded Costs & Restructuring Filings, 330 N.J. Super. 65, 93 (App. Div. 2000) (citation omitted).

MSRA's findings and declarations undeniably supply the justifications for granting the State the authority to unilaterally modify the expired-but-effective CNA. See N.J.S.A. 52:27BBBB-2. The reasonableness standard does apply to N.J.S.A. 52:27BBBB-5(3)(g), but plaintiffs waived this precise issue in relation to the arbitration award because they did not raise it before the trial judge. R. 2:10-2. Therefore, the Director's unilateral modification of the

23

contractual term on accumulated sick leave was permissible, whether under N.J.S.A. 52:27BBBB-5(3)(i) or (g).

In the end, although no case law directly addresses whether lump sum payments upon promotion for accumulated sick leave constitute a vested right, Judge Mendez's reasoning that the vested right was the sick leave days, not the dollar amount, is also persuasive. The Director disapproved the arbitration award granting Barnhart and Sarkos lump sum payments for accumulated sick leave when they were promoted. But the Director permitted them to use the accumulated leave during their tenure. Thus, because plaintiffs retain their sick leave benefit, the arbitration award does not infringe on their vested contractual rights, if any.

As to plaintiff's remaining arguments, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

As a last word, although we said this was a case of first impression, we note the specific dispute is unlikely to be repeated because, Governor Philip D. Murphy signed bills A. 5590/S. 3819 in June 2021, amending the MSRA, and extending the monitoring period under MSRA from five years to nine years. A sunset provision in N.J.S.A. 34:13A-16(j), provides:

24

The provisions of this subsection shall no longer be applicable on and after the first day of the sixth year next following the determination by the Commissioner of Community Affairs that the municipality shall be deemed "a municipality in need of stabilization and recovery" pursuant to section 4 of [L. 2016, c. 4 (N.J.S.A. 52:27BBBB-4)]; however, actions taken pursuant to this subsection prior to the effective date of [June 24, 2021] of [L. 2021, c. 124] shall be final and shall not be subject to reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION